IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANSA MUSA MASSI, | : | No. 4:06cv34 |
| Plaintiff, | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | (Magistrate Judge Mannion) |
| UNIT MANAGER D. HOLLENBACH, | : | |
| *et al.*, | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

August 1, 2008

This matter is before the Court on the report and recommendation of

Magistrate Judge Malachy E. Mannion (Doc. 65) which recommends that the

motion for summary judgment of the plaintiff Mansa Musa Massi (Doc. 52) be

denied and that the defendants' motion for summary (Doc. 54) be granted.  Massi

filed objections to the report and recommendation (Doc. 66), to which the

defendants filed a response (Doc. 67).  This matter is now ripe for review.

Although the Court will base its decision, to some extent, on slightly different

reasoning, we will adopt the Magistrate Judge's recommendation, deny Massi's

summary judgment motion, and grant the defendants' summary judgment motion.

I.      **STANDARDS OF REVIEW**

A.      **Review of a Magistrate Judge's Report and Recommendation**

Where, as here, objections are filed to the report of a magistrate judge, the

district court makes a *de novo* determination of those portions of the report or the

proposed findings or recommendations to which objections are made.  28 U.S.C. §

636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  Under this

standard, a court may accept, reject, or modify, in whole or in part, the magistrate

judge's findings or recommendations.  *Id.*  Although the standard of review is *de*

*novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the

exercise of sound discretion, chooses to place on a magistrate judge's proposed

findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v.*

*Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

B.      **Summary Judgment Standard of Review**

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by

pointing to an absence of evidence supporting an essential element as to which the

2

non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II.   BACKGROUND

With this standard of review in mind, the following are the procedural history and undisputed facts material to the disposition of the parties' cross-motions for summary judgment.[1]

Massi's claims in this action arise from his incarceration at the United States Penitentiary in Lewisburg, Pennsylvania. Massi alleged that various USP-Lewisburg and other Bureau of Prisons officials violated his rights by denying him certain recreational and religious publications, violated his free exercise rights by restricting his exercise of Islam, and violated his free exercise rights by not providing enough hot food to Muslim prisoners. The defendants moved to dismiss

---

[1] Unless otherwise noted, this background is derived from the undisputed facts stated in the report and recommendation (Doc. 65 at 6-13). The Court's independent review of the parties' submissions in support of and opposition to their motions confirms the Magistrate Judge's recitation of the background of this case.

Massi's complaint, and by order of March 2, 2007, the Court adopted the

Magistrate Judge's report and recommendation in part and dismissed all of Massi's

claims except his claims against defendants Hollenbach, Adami, Smith, Dodrill,

and Watts regarding the denial of recreational and religious publications.  (Doc.

41.)

Massi's remaining claims thus arise from his attempt to obtain certain

publications.  In 2004 and 2005, Massi wanted to obtain various magazines and

softcover books about his hobby of leathercraft.  Massi already owns copies of

these publications, which are located at his home, but under BOP regulations, he

may only receive such publications at the prison from a publisher, book club, or

bookstore, unless an exception is made.  The relevant BOP policy is found at 28

C.F.R. § 540.71(a), and provides, in relevant part:

> (a)(2) At medium security, high security, and administrative institutions,
> an inmate may receive softcover publications (for example, paperback
> books, newspaper, clippings, magazines, and other similar items) only
> from the publisher, from a book club, or from a bookstore.
> ...
> (4) The Unit Manager may make an exception to the provisions of
> paragraphs (a)(1) and (2) of this section if the publication is no longer
> available from the publisher, book club, or bookstore.  The Unit Manager
> shall require that the inmate provide written documentation that the
> publication is no longer available from these sources.  The approval or
> disapproval of any request for an exception is to be documented, in
> writing, on an Authorization to Receive a Package form which will be
> used to secure the item.

28 C.F.R. § 540.71(a)(2), (4).[2]

In an attempt to take advantage of the exception provided for by §
540.71(a)(4), in April 2004, Massi wrote to seven publishers or bookstores,
inquiring if certain leathercraft books were available to purchase.  Massi received
responses from three of these sources indicating that they did not carry the books.
Each response was handwritten, not on company letterhead, did not identify the
name of the source providing the response, and did not indicate the books at issue.[3]
(*See* Doc. 55-4 at 43, 49, 51.)  Massi presented these responses to Unit Manager
John Adami as written documentation that the leathercraft books are no longer
available from a publisher, book club, or bookstore.[4]  Adami agreed to review
Massi's request for an exception under § 540.71(a)(4).  Upon review, however,
Adami questioned the authenticity of the documentation because it was not
possible to determine from the documents themselves who had provided the

_____

[2] The regulation also provides that "[a]t all Bureau institutions, an inmate may receive
hardcover publications and newspaper only from the publisher, from a book club, or from a
bookstore."  28 C.F.R. § 540.71(a)(1).  None of the publications Massi attempted to obtain are
alleged to be hardcover publications or newspapers.

[3] It appears that two of the responses were handwritten notes placed directly on Massi's
letter.  (*See* Doc. 55-4 at 43, 49.)

[4] As noted by the Magistrate Judge, superimposed on top of the photocopies of these
documents as provided by Massi to the Court are envelopes addressed to Massi at USP-
Lewisburg with the return address of the three sources.  No party has indicated whether Massi
provided the defendants with the documents and envelopes or only the documents.  (*See* Doc. 65
at 8 n.5, 6 and 9 n.7.)

response.  Adami believed it was possible that the responses came from Massi's

family rather than from an authorized source.  Massi gave Adami the telephone

numbers for the authorized sources and requested that Adami call them to confirm

that they are publishers, but Adami refused.  Because inmates frequently attempt to

introduce contraband into the prison through the mail, Adami instructed Massi to

have the publishers send their responses directly to him or his staff.  Adami never

received a response directly from any publisher.

Massi claims that in January 2005, he wrote to the same publishers again and

that he received four responses indicating that they no longer carried the books

about which he inquired.  (*See* Doc. 55-4 at 50, 52-54.)  All four of the responses

were on company letterhead, as Massi had requested (*see* Doc. 55-4 at 55),

however, none indicated the books at issue, and all were mailed directly to Massi,

not to prison staff.  Massi provided these responses to Dean Hollenbach, the unit

manager of the new unit to which Massi had been assigned, in another attempt to

obtain an exception pursuant to § 540.71(a)(4).  Hollenbach denied Massi's request

for an exception because the documentation had not been sent directly to him or

other prison staff.  Hollenbach explains that because of the serious security

concerns posed by the introduction of contraband through the mail, prison officials

require documentation confirming that publications are not available from an

7

authorized source be sent directly to the institution.  This requirement insures that inmates do not circumvent the usual security procedure requiring publications to come directly from a publisher, book club, or bookstore.  Hollenbach directed Massi to inform the publishers to send documentation directly to him.  Hollenbach never received a response directly from any publisher.

Massi's claims also arise from his attempt to obtain certain religious publications.  BOP regulations provide that "[a]n inmate who wishes to have religious books, magazines or periodicals must comply with the general rules of the institution regarding ordering, purchasing, retaining, and accumulating personal property.  Religious literature is permitted in accordance with the procedures governing incoming publications."  28 C.F.R. § 548.16(c).  The procedures for obtaining religious publications are thus the same as the procedures for obtaining any other publications.  That is, softcover publications may only be received by an inmate from a publisher, book club, or bookstore as stated in § 540.71(a)(2), unless an exception is granted pursuant to § 540.71(a)(4).

Massi alleges that he asked Hollenbach for permission to be mailed religious softcover books, magazines, and other publications "from local, national and international institutions of religious propagation" such as mosques, churches, and synagogues.  Massi alleges that Hollenbach refused to grant his request unless the

publications were mailed directly from a publisher, book club, or bookstore. Hollenbach avers that he informed Massi about the proper procedure for obtaining publications, regardless of the topic, pursuant to § 540.71.

Massi testified that he wrote to authorized sources regarding the availability of religious publications.  One source indicated that the publications Massi sought were available for purchase, but Massi never attempted to purchase them.  Massi received no responses indicating that the religious publications he sought were unavailable.

Massi pursued his administrative remedies regarding both Adami's and Hollenbach's refusal to approve exceptions pursuant to § 540.71(a)(4).  Each of his appeals was denied, however, on the ground that documentation indicating that a publication is no longer available from a publisher, book club, or bookstore must be sent directly from the source to prison staff.

## III.   DISCUSSION

### A.   Construction of Plaintiff's Claims

Before addressing the merits of the parties' cross-motions for summary judgment, the Court must determine what claims the plaintiff has put at issue.  We do so with the recognition that Massi's *pro se* complaint "is to be liberally construed," and that "a *pro se* complaint, however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

For the "statement of claim" in his complaint regarding his denial of exceptions under § 540.71(a)(4), Massi simply recites the facts stated above.  (*See* Compl., Doc. 1, at ¶¶ IV(1), (2).)  As relief for his claim regarding the leathercraft publications, Massi requests that he "be allowed to have softcover literature mailed from any source when it is not available from bookstores, book clubs, or publishers while he is in medium, high, and administrative institutions."  (*Id.* at ¶ V(1).)  As relief for his claim regarding the religious publications, Massi requests that he "be allowed to have softcover religious literature mailed from masjid, churches, synagogues, local, national and international institutions of religious propagation." (*Id.* at ¶ V(2).)  Massi also requested that he be awarded damages.  (*Id.* at ¶ V(5).)  In his complaint, Massi does not allege that the defendants violated his constitutional rights and does not mention the Administrative Procedure Act ("APA") or the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

In his brief in opposition to the defendants' motion to dismiss (Doc. 31), Massi described one "question presented" as whether the denial of softcover

leathercraft publications violated his constitutional rights.  (*See id.* at 8.)  Massi
went on to state, however, that "it is not 28 C.F.R. § 540.71 ... that is being
challenged," but rather whether he complied with that regulation.  (*Id.* at 9.)  As to
his claim regarding the religious publications, Massi described the "question
presented" as whether the defendants' denial of his request to receive publications
directly from religious organizations violated his constitutional rights.  (*Id.* at 8,
10.)  Although Massi alleged that one of his other claims implicated RLUIPA,
Massi did not argue that his inability to receive publications directly from religious
organizations violated RLUIPA or imposed a substantial burden on his exercise of
religion.  (*See id.* at 10-11.)

In his brief in support of his present motion for summary judgment, Massi
recites the background of his claim regarding the leathercraft publications, but
makes no argument at all related to this claim.  (*See* Doc. 53.)  As to his claim
regarding the religious publications, Massi recites the background of this claim and
quotes the First Amendment and certain parts of RLUIPA, but makes no attempt at
explaining his claim or arguing why he is entitled to summary judgment.  (*Id.* at 8-
10.)  Massi does argue that he is entitled to damages under 42 U.S.C. § 1983.  (*Id.*
at 10-11.)

In his brief in opposition to the defendants' motion for summary judgment, Massi states the "questions presented" as whether the defendants violated his First and Fifth Amendment rights by refusing to allow him to receive leathercraft publications pursuant to 28 C.F.R. § 540.71 and by refusing to allow him to receive religious publications from "local, national, and international institutions of religious propagation." (*See* Doc. 61 at 5-6.)

Thus at different times, Massi has variously described his claims as a constitutional challenge to BOP regulations, a constitutional challenge to the defendants' application of BOP regulations to him, a challenge to BOP officials' interpretation of BOP regulations, and possibly a claim under RLUIPA. Massi seeks both an order directing BOP to allow him to receive certain publications in a certain manner and compensatory damages.

The defendants have consistently construed Massi's claims as a constitutional challenge to § 540.71 and/or the application of that regulation to Massi. (*See* Doc. 26 at 7-10; Doc. 55 at 8-13.) The defendants, therefore, argue that Massi's claims are governed by *Turner v. Safley*, 482 U.S. 78 (1987).

The Magistrate Judge disagreed, stating that *Turner* does not control here because Massi does not challenge the validity of § 540.71 itself but rather the defendants' interpretation of that regulation. (Doc. 65 at 16-17.) The Magistrate

Judge found that Massi had stated a constitutional violation (*id.* at 16), but found

that the defendants were entitled to qualified immunity (*id.* at 16-23).  In

addressing the qualified immunity defense, the Magistrate Judge applied the two-

step analysis of *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.*,

467 U.S. 837 (1984) and determined that § 540.71(a)(4) is ambiguous and that the

defendants' interpretation of that provision is reasonable.  (*Id.* at 17-22.)  The

Magistrate Judge therefore concluded that the defendants are entitled to qualified

immunity.  (*Id.* at 22-23.)

In his objections to the report and recommendation, Massi argues that the

defendants and the Magistrate Judge have misconstrued his claim regarding the

religious publications.  Massi asserts that his claim is that the BOP regulations

regarding receipt of religious publications are "unduly restrictive" because they

only allow receipt of publications from religious organizations if an exception is

granted pursuant to § 540.71(a)(4).  (Doc. 66 at 11.)

The Court will liberally construe Massi's claims regarding both the

leathercraft and religious publications as both a claim, pursuant to *Bivens v. Six*

*Unnamed Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), that the

application of § 540.71 violates his constitutional rights and as a claim, pursuant to

the APA, 5 U.S.C. § 702, that the BOP's determination to deny him an exception

13

under § 540.719(a)(4) is premised on an unreasonable interpretation of that regulation.  In addition, although RLUIPA was unmentioned until Massi's brief in support of his motion for summary judgment, the Court, in an abundance of caution, will address Massi's claim regarding the religious publications as a claim under that statute.

### B.       Massi's Challenge to Sections 540.71(a)(2) and (4)

Massi first alleges that the BOP's requirement that he obtain softcover leathercraft and religious publications from a publisher, book club, or book store unless he provides adequate written documentation that a publication is no longer available from such a source violates his First Amendment rights.[5]  We will analyze Massi's claim regarding the regulation itself as well as the exception to the regulation.

The Third Circuit quite recently summarized the proper inquiry for such a claim:

---

[5] In his brief in opposition to the defendants' motion for summary judgment, Massi also asserts, for the first time, that § 540.71 violates his Fifth Amendment rights.  (See Doc. 61 at 5-6.)  Massi does not state which Fifth Amendment right he now claims was violated, but presumably, Massi means to argue that the denial of his initial requests and subsequent administrative appeals violated his procedural due process rights.  No allegations were made in the complaint or elsewhere to provide the grounds for a due process claim, and none of the evidence introduced on summary judgment supports such a claim.  In any event, even a liberal construction of Massi's claims does not allow for consideration of this new claim raised for the first time in opposition to summary judgment.

Although "imprisonment does not automatically deprive a prisoner of ... First Amendment protections," those constitutional rights may at times be restricted within the prison setting. *Beard v. Banks*, 548 U.S. 521, 126 S. Ct. 2572, 2577-78 (2006). We evaluate prison regulations alleged to violate an inmate's First Amendment right to possess publications and legal materials under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78 (1987). First, we assess whether there is a " 'valid, rational connection' between the prison regulation and the legitimate interest put forth to justify it." *Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006). If a rational relationship exists, we consider three other factors: "(1) whether inmates retain alternative means of exercising the circumscribed right ... (2) the burden on prison resources that would be imposed by accommodating the right and (3) whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological objectives." *Id.* at 360-61. However, prison administrators are not required to use the least restrictive means possible to further legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989).

Ultimately, the party challenging the prison regulation bears the burden of showing that it is constitutionally unreasonable. *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). This burden is "heavy" because plaintiffs must overcome the presumption that prison officials acted within their "broad discretion." *See Shaw v. Murphy*, 532 U.S. 223, 232 (2001). Nevertheless, prison administrators must come forward with a legitimate governmental interest that justifies the regulation, and they must demonstrate a rational connection between the policy and that interest. *Jones*, 461 F.3d at 360 (citing *Wolf v. Ashcroft*, 297 F.3d 305, 308 (3d Cir. 2002)). Although we accord substantial deference to their professional judgment, *see Overton*, 539 U.S. at 132, the defendant administrators' evidence must "amount to more than a conclusory assertion." *Id.*

*Monroe v. Beard*, --- F.3d ----, 2008 WL 2896615, at *4-5 (3d Cir. July 29, 2008).

The regulation which Massi challenges plainly passes muster under *Turner*.

The articulated legitimate penological interest furthered by §§ 540.71(a)(2) and (4)

is the prevention of the introduction of contraband into the prison through mailed materials. *See* Incoming Publications: Softcover Materials, 67 Fed. Reg. 77,161 (Dec. 17, 2002) (stating "This amendment is necessary to reduce the amount of contraband introduced into Federal prisons through materials sent by mail. The presence of contraband in the prisons, including drugs, weapons, and escape-related materials pose grave dangers to staff, inmates and the public....  We intend this rule change to strengthen security procedures designed to prevent introduction to contraband into Bureau institutions."). The legitimacy of the BOP's interest in institutional security is beyond cavil. *See Thornburgh*, 490 U.S. at 415 ("The regulations are expressly aimed at protecting prison security, a purpose this Court has said is central to all other corrections goals.").

The regulation is rationally related to this legitimate purpose. The regulation ensures that softcover publications, a medium frequently and easily used to convey contraband and difficult for prison staff to screen, are sent only by authorized sources least likely to send contraband into the prison. The regulation applies only to medium security, high security, and administrative institutions, and thus is directed at those institutions where security concerns are greatest. The exception provided for in subsection (a)(4) mitigates the potential impact of the regulation on inmates' right to possess First Amendment material. The exception's requirement

of written documentation reasonably ensures that inmates do not use the exception to circumvent the security procedures established in subsection (a)(2).

As to the second *Turner* factor, the regulation itself provides an alternate means for inmates to obtain softcover publications through the exception for materials no longer available from an authorized source.  Further, inmates also retain the ability to obtain publications from institution libraries.

Under the third *Turner* factor, the Court must consider the impact of accommodating Massi's desire to obtain publications from sources other than publishers, book clubs, and bookstores, without meeting the requirements of paragraph (a)(4), on guards, other inmates, and the allocation of prisoner resources generally.  *Monroe*, 2008 WL 2896615, at *6.  To allow inmates to receive softcover publications from any chosen source would greatly increase the chance of contraband entering the institution and thereby greatly increase the security risk to prison staff and other inmates.  Moreover, such an arrangement would require additional screening of incoming mail, and therefore increased staff time and cost. *See* 67 Fed. Reg. at 77,163.

Finally, as to possible alternatives to the regulation, Massi seems to suggest two.  First, he suggests that the written documentation required by the exception need not be sent directly from the authorized source to the prison as the defendants

17

have required here, but rather may be sent first to the inmate and then passed on to

prison staff.  This alternative, however, eviscerates much of the security benefit of

the regulation.  If anyone can send written documentation to an inmate, prison staff

will have no way of verifying the source or authenticity of such documentation,

and inmates would be presented with a ready means of bypassing the legitimate

security measures which the regulation puts in place.  The requirement that written

document be sent directly to the institution imposes almost no additional burden on

the inmate.  Massi's alternative, on the other hand, comes at a high cost to the

legitimate objectives of the regulation.

Massi's second suggested alternative seems to be allowing inmates to

receive religious publications directly from religious organizations.  This

alternative, however, would do grave harm to the content neutrality of the

regulation.  *See Thornburgh*, 490 U.S. at 415 (stating "we have found it important

to inquire whether prison regulations restricting inmates' First Amendment rights

operated in a neutral fashion, without regard to the content of the expression.").

Such an exception may also unnecessarily entangle prison staff in evaluating the

"religious-ness" of publications and outside organizations, and potentially raises

Establishment Clause concerns.  Moreover, as demonstrated by the facts of this

case, inmates retain ample means to obtain religious publications.  The only

18

response Massi received to his inquiries about religious publications informed him that such publications were available.  Massi simply never took advantage of the opportunity to obtain them.

The regulation and the exception thereto represent a reasonable response to the security threat of contraband, and therefore are valid on their face and as applied to Massi in the circumstances of this case.  The Court finds no violation of Massi's First Amendment rights, and therefore, the defendants are entitled to summary judgment.[6]

---

[6] The defendants also seek summary judgment on the basis of qualified immunity. Because there is no constitutional violation here, the qualified immunity defense is essentially moot, and the Court should not continue with such an analysis.  *See Scott v. Harris*, --- U.S. ---, 127 S. Ct. 1769, 1774 & n.4 (2007).

**C.    Massi's Challenge to the BOP's Interpretation of Section 540.71(a)(4)**

Massi also challenges the BOP's interpretation of the exception found in §

540.71(a)(4) requiring that the written documentation that a softcover publication

is no longer available from the publisher, book club, or bookstore be sent directly

to the institution.  "An agency's reasonable interpretation of its own regulations

'attracts substantial judicial deference.'"  *Morrison v. Madison Dearborn Capital*

*Partners III L.P.*, 463 F.3d 312, 315 (3d Cir. 2006) (quoting *United States v.*

*Cleveland Indians Baseball Co.*, 532 U.S. 200, 219 (2001)).   "Our task is not to

decide which among several competing interpretations best serves the regulatory

purpose.  Rather, the agency's interpretation must be given controlling weight

unless it is plainly erroneous or inconsistent with the regulation."  *Id.* (quoting

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *see also Levi v.*

*Holt*, 192 Fed. Appx. 158, 161 (3d Cir. 2006) ("The BOP's interpretation of its

own regulation is controlling unless it is plainly erroneous or inconsistent with the

regulation.").  "In other words, we must defer to the [agency's] interpretation

unless an 'alternative reading is compelled by the regulation's plain language or by

other indications of the Secretary's intent at the time of the regulation's

promulgation.'"  *Thomas Jefferson Univ.*, 512 U.S. at 512 (quoting *Gardebring v.*

*Jenkins*, 485 U.S. 415, 430 (1988)).  This deferential standard is easily met in this case.

BOP's interpretation of § 540.71(a)(4) is plainly consistent with the purpose of the regulation.  As noted above, the purpose of § 540.71 is to reduce the amount of contraband introduced into federal prisons through materials sent by mail.  To accomplish this purpose, the regulation requires that softcover publications, frequent and difficult to detect sources of contraband, be received only from a publisher, book club, or bookstore.  Subsection (a)(4) of the regulation provides an exception from this requirement if an inmate can provide "written documentation that the publication is no longer available from these sources."  This provision, however, does not explicitly address how an inmate must provide such written documentation.  BOP's requirement that the written documentation be sent directly to institution staff ,without going through the inmate, furthers the goals of the regulation by ensuring that inmates do not circumvent the security procedures established by § 540.71(a)(2).  Written documentation provided by an inmate himself is subject to tampering, alteration, or outright fabrication, and the BOP has reasonably concluded that such an interpretation would allow inmates to bypass the very security measures the regulation is meant to implement.  The defendants' interpretation of § 540.71(a)(4) is not plainly erroneous or inconsistent with that

regulation, and therefore is controlling.  The defendants are entitled to summary

judgment on Massi's APA claim.[7]

### D.      Massi's RLUIPA Claim

Massi did not raise an RLUIPA claim regarding the denial of his request for

an exception under § 540.71(a)(4) for religious publications in his complaint, nor

did he suggest that he was attempting to raise such a claim until his brief in support

of his motion for summary judgment.  Even in that submission, Massi merely

quotes from the sections of RLUIPA setting forth Congress's findings, the statute's

purpose, the substantive provision related to land use, and the provision providing

for a cause of action.  (Doc. 53 at 9-10.)  Massi has never made any factual

allegations or legal arguments in support of an RLUIPA claim.  Nonetheless, in

recognition of Massi's *pro se* status, the Court will liberally construe his pleadings

as at least attempting to make out an RLUIPA claim.

---------------------------------------

[7] In denying the defendants' motion to dismiss, the Court stated that a "fair reading" of
paragraph (a)(4) does not implicate a restriction that written documentation be sent directly to
the institution.  (Doc. 41 at 13.)  The question at that stage of the proceedings, however, was
whether, on the limited record before the Court, assuming all allegations of the complaint to be
true, and taking all reasonable inferences in the plaintiff's favor, did Massi state a claim upon
which relief may be granted.  We answered that question in the affirmative.  At this point, on a
fully developed record and under the deferential standard mandated by the APA and binding
precedent, the question is not what a "fair reading" of § 540.71(a)(4) might be, but whether the
BOP's interpretation of that provision is plainly erroneous or inconsistent with the regulation.
We find that it is not, and therefore, regardless of how "fair" Massi's or the Court's reading of
paragraph (a)(4) is, the defendants are entitled to summary judgment.  *See Thomas Jefferson
Univ.*, 512 U.S. at 512 ("Our task is not to decide which among several competing
interpretations best serves the regulatory purpose.").

RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  The statute specifies the respective burdens of the parties to an RLUIPA claim:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or [RLUIPA], the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2(b).

The first step then in analyzing Massi's arguable RLUIPA claim is to determine whether Massi has met his prima facie burden of establishing that the defendants' refusal to grant him an exception for religious publications under § 540.71(a)(4) substantially burdens the exercise of his religion.  The Third Circuit has adopted the following definition of "substantial burden" in this context:

23

For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).

Massi can meet neither of these standards. Section 540.71(a) places a slight burden on Massi's ability to receive religious publications, but Massi has never alleged that he was forced to choose between following his religion and following BOP regulations, and he was never pressured to modify his religious practice or beliefs by the defendants. In fact, the record demonstrates that Massi was easily able to obtain religious publications in accordance with § 540.71. The only response Massi received to his inquiries about such publications indicated that they were available for him to obtain. Massi simply chose not to take advantage of this opportunity. Massi cannot meet his prima facie burden of demonstrating that the defendants substantially burdened his religious exercise, and accordingly, the defendants are entitled to an entry of summary judgment on any possible RLUIPA claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court will adopt the recommendation of the Magistrate Judge, overrule the objections thereto, deny the plaintiff's motion for

summary judgment, and grant the defendants' motion for summary judgment.  An appropriate order will enter.